### DELL CAMERON AND WIFE *v.* J. W. HOLENSHADE ET AL.

Where a partition of lands among heirs was effected by a sheriff's sale, and a part of the property was purchased by one of the heirs, who afterward sold and conveyed it, at private sale, to a purchaser, who entered into possession and made valuable improvements without any actual knowledge of the equitable lien for the purchase money in favor of the other heirs, who stood by and saw such purchaser make the improvements without advising him of the lien: *Held*, that such purchaser at private sale was entitled to the benefit of the occupying claimant law, as against the lien, and to be reimbursed out of the proceeds of a resale of the property in a suit afterward brought by the other heirs to enforce the lien, to the extent of the value which he had add d to the property by the improvements.

Where an innocent purchaser has received a deed of general warranty, and has paid off and canceled on the record certain mortgages which he

assumed as part payment of the purchase money, a court of equity will disregard such cancellation and hold the mortgages valid subsisting liens in the hands of the purchaser to protect him against the claims of junior incumbrancers.

This case was taken to the General Term, in part by reservation, and in part by a petition in error.

Under a decree in a partition. suit among the heirs of Isaac Golden, a sale was had of valuable real estate on the 3d of May, 1867, and Mary J. Holenshade, one of the heirs, became the purchaser of the property in question in this case, situated on the west side of Elm street, for $18,100; and also of other property belonging to the estate. The sale was confirmed by the court June 27, 1867, and a deed was ordered, and made and delivered. In the decree of confirmation, the court found that the property was incumbered by a mortgage executed by Isaac Golden to Susan Ruffner in 1859, amounting to $2,270, with interest, and ordered the deed to be made subject to said mortgage. The court further found that George W. Golden, one of the heirs, had mortgaged his interest (one-sixth) in all the property of the estate of his father, of which estate this property was part, to secure to Alexander Long $5,254, and to Robert Boake $5,230.75, and ordered, with the consent of the mortgagees and all the parties, that said security should be transferred from the undivided one-sixth of the whole to this specific property, situated on the west side of Elm street, by the execution of two mortgages by Mrs. Holenshade to Long and to Boake for their respective amounts, and that the mortgage of G. W. Golden on the undivided one-sixth should thereupon be canceled; and George W. Golden was to be charged for the amount of these two mortgages, as so much received of his distributive share, and Mrs. Holenshade credited with the same amount on her purchase.

The same decree secured to the other heirs the amounts coming to them, respectively, out of the proceeds of the sales of all the property. The entire sales amounted to

$84,000, of which. Mrs. Holenshade was the purchaser to the extent of $57,100. But the property in question, in this case, is on the west side of Elm street, while the other property purchased by Mrs. Holenshade, at the same time, was on the east side of Elm street. In pursuance of the decree, Mrs. Holenshade executed mortgages on this property on the west side of Elm street, the title of which is now in question, to Long and to Boake, which mortgages were recorded.

On the 11th of February, 1868, Stephen Gibson and Robert H. Gibson purchased, at private sale, the property in question, viz: on the west side of Elm street, from Mrs. Holenshade, for $18,600, thus incumbered, and received a deed of general warranty therefor, with full covenants, by which they became entitled to a clear and unincumbered title from Mrs. Holenshade, and to be protected therein under the warranty.

Under these circumstances, they paid off these liens, amounting in all to $14,766.16, and took credit for that amount as paid on the purchase, and the balance of the purchase money, $3,833.84, they paid to Mrs. Holenshade. They took immediate possession and proceeded immediately to make valuable and permanent improvements to the amount of $5,500. There is no controversy as to the fairness of the price paid by the Gibsons.

The plaintiffs, the wife of Dell Cameron being one of the Golden heirs, claimed to subject this property to the payment of their equitable lien for the purchase money, on the ground that it existed at the time of the sale of this property by Mrs. Holenshade to the Gibsons. The property has been sold, in this case, for $16,666.67, and the questions to be decided relate to the distribution of this fund.

*S. T. Crawford,* and *Long, Hoeffer & Kramer,* for plaintiffs.

*Huston & Shunk* and *Henry Snow,* for defendants.

TAFT, J.    The first question we shall consider is, whether the Gibsons are entitled to the benefit of the occupying claimant law.    The decision and judgment at Special Term was in favor of the claim, and this part of the case comes up on the petition in error.    It is claimed that this ruling ought to be reversed, because at the time of the purchase and improvements made by the Gibsons, the suit was pending under which the liabilities were ascertained that made the sale of this property necessary to satisfy the liens against it.    We are all satisfied, as the judge at Special Term was, that the Gibsons took the title of Mrs. Holenshade in good faith, supposing that it was clear and unincumbered except by the mortgages already mentioned, which the Gibsons paid, and that all the litigation then pending ended with the confirmation of their purchase, and that they supposed they became by the purchase the owners of the property.    They were in quiet possession under the decree of the court and their deed.

The claims on which this property has now been subjected to sale and taken away from the Gibsons, were expressly charged upon the other property, or were ordered by the court to be paid out of the proceeds of the sales of other property, and the equitable liability by which this property has now been sold was not apparent, and not such as to make the Gibsons, as purchasers, occupy the position of purchasers *pendente lite.*

The improvements which they put on the property were necessary and judicious, and made in good faith, and the evidence shows that they added to the value of the property an amount equal to their cost.

The paper title, under which Mrs. Holenshade held possession, was under the decree of court, and the title of the Gibsons under her, was regular and by deed of warranty.

The ruling at the Special Term took nothing from these parties who dispute the claim.    It left them the proper proceeds of the sale of the property, as it was before the

Cameron and wife *v.* Holenshade et al.

purchase by the Gibsons. It only gave the Gibsons the benefit of what they had in good faith added. This, we think, is in accordance with the decisions of the Supreme Court of this State.

The sale of the property on an adverse proceeding, we consider equivalent to an eviction. It is in fact an eviction. But if it were not so, we think that under the circumstances of this case, we could not, as a court of equity, allow these claimants, who stood by and suffered the Gibsons, without notice, to expend their money in improving this property, after the improvements were made, to spring this contingent claim upon them, and take away not only the property for which they had paid a full and fair price, but the value of their improvements also.

The next question to be considered is, whether the Gibsons, by paying off the mortgages to protect their title, have precluded themselves from claiming the benefit of these mortgages in the distribution of the proceeds of sale, by allowing them to be entered as satisfied. If the Gibsons, when they paid off these mortgages, had taken an assignment of them, instead of canceling them, they could have stood upon them as a plank with which to escape from the wreck. We think that, in the eye of equity, their relation to junior incumbrancers is not affected by the ceremony of canceling the mortgages. By paying them, under the circumstances of this case, they became substituted to the position of the mortgagees, so far as such a substitution was necessary to protect them from the injustice of having a junior incumbrancer force them to pay for their property more than once.

A court of equity will not countenance a speculation of this kind upon the money of an innocent purchaser; and in determining the question whether the purchaser in such a case had notice, we inquire as to his actual and not his mere constructive knowledge of the junior incumbrancer's claim.

The effect of the claim for these junior claimants would

be to postpone those prior mortgages to these junior judgments, which the Gibsons were not compelled to do, and never could have intended to do, and never would have done with actual knowledge of the junior claims. What equity then, or what reason is there, to justify us in interpreting their conduct in a manner inconsistent with what we are morally certain was their purpose?

The property sold at sheriff's sale, under the claims of these junior incumbrancers, on the 18th June, 1870, for $16,666.67.

The amount of the incumbrances paid by the Gibsons, as we have seen, was, at the time of their purchase, $14,766.16, and the value of the improvements put on the premises, as proven, $5,500, making a total of $20,266.16, besides interest for more than a year and the costs of these proceedings, a sum largely exceeding the proceeds of the sheriff's sale.

The result is to leave nothing of the proceeds of sale to be appropriated on the claims of the plaintiffs and other junior incumbrancers.